DANIEL H. CRAIG vs. FLETCHER HARPER & others.

The defendants, who were booksellers and publishers in New York, by a letter of the 3d of January, 1844, in answer to a letter of the plaintiff, made an offer to supply the plaintiff with copies of their " Illuminated Bible," at a price named. The plaintiff made no reply to the defendants' letter, but, on or about the 1st of February following, sent an agent to the defendants to procure some numbers of the work in question, which the defendants promised to furnish as soon as the navigation should open : The navigation opened in three or four days, when the plaintiff's agent called upon the defendants for the books, but the defendants refused to furnish them : It was held, that if the defendants' letter of January 3d was such an offer to sell, as would have been binding, if it had been accepted, and the acceptance made known to them, yet that they might retract the offer, at any time before acceptance, and that the refusal to deliver the work to the plaintiff's agent was a retraction of the offer.

IN this case, the facts are sufficiently stated in the following opinion of the court : —

METCALF, J.    This is an action of assumpsit, to recover

Craig *v.* Harper & others.

damages for an alleged breach of contract by the defendants in not supplying the plaintiff with copies of a work published by them in New York, and called the "Illuminated Bible." The case is submitted to the court upon the letters of the parties and the depositions of two witnesses.

The first question is, whether the defendants made the contract set forth in the plaintiff's declaration.

On the 8th of January, 1844, the plaintiff addressed a letter to the defendants, of which the following is the material part : "I wrote you some days since, in reference to obtaining a supply of your Illuminated Bible ; and not having received from you any acknowledgment of its reception, I have thought it possible that you may not have received it. I before stated, and now repeat, that I feel inclined to take hold of your work, and to devote my whole time to it, as a canvassing agent in this city [Boston] and state. Will you be kind enough to inform me of your lowest cash price per hundred, and also whether your arrangements are such that you can give to any one person the exclusive right to canvass for the Bible, in a particular section of the state ? Also please inform me of the difference in price between the delivery of the numbers in this city and New York."

The defendants received the plaintiff's first letter, as well as the second, and answered the first, under date of January 3d, and the second, under date of January 10th, and put the answers into the post-office in New York. The plaintiff received both answers at once ; the post mark on each being January 11th. The answer to the plaintiff's first letter was thus: "Yours of the 3d is at hand. We cannot give an exclusive agency for the circulation of the Bible, but shall be happy to supply you with any quantity you may desire, at a discount of one third, for the cash. We are out of the work at present, but shall have a full supply on the 25th instant, when we shall be happy to receive your orders. Your canvassers, we doubt not, can procure any number of subscribers." The answer to the plaintiff's second letter was as follows : "Yours of the 8th instant is received. We supply

the Bible to dealers at two dollars per dozen numbers, deliv-ered here, cash.    We have given no exclusive rights to agents, and would find it impossible to guaranty such rights, even if we did not think it impolitic to grant them.    We deal di-rectly, however, with no one in Massachusetts, out of Boston, Cambridge, Lowell, Springfield, Worcester, New Bedford, and Nantucket; and we have therefore no doubt that you would be able to sell very many of them."

From this correspondence it appears that the defendants merely answered the plaintiff's inquiries; and stated, in their first letter, that they should be happy to supply him with any quantity of their work, which he might desire, and should also be happy to receive his orders, after a certain day.    To that letter the plaintiff never made any reply.    Thus far, then, there was nothing like a contract between the parties.    At most, the defendants only made an offer to the plaintiff, to sell to him, on certain terms, such a quantity of books as he should desire; and unless that offer was accepted within a reasonable time, and the acceptance notified to the defend-ants, and perhaps also notice given to them of the quantity which the plaintiff did desire, they were not bound.    This is among the rudiments of the law.

We have therefore to look at the further evidence produced by the plaintiff, to learn whether any subsequent transactions of the parties prove the contract on which he has declared.

It appears from the deposition of Oliver W. Craig, the plaintiff's brother, that he called on the defendants, about the 1st of February, 1844, at the plaintiff's request, "to procure some numbers of the second edition of the first number of the Illuminated Bible;" that the defendants told him they would let him have them for the plaintiff, as soon as naviga-tion should open; that navigation opened in three or four days afterwards, and that he called again on the defendants for the numbers for the plaintiff; that they told him they would not supply the plaintiff with the work, because he was selling it for less than twenty-five cents a number, at retail.

On the 4th of February, the plaintiff wrote to the defend

Craig *v.* Harper & others.

ants, complaining of their refusal to deliver the work to his brother, for the plaintiff's use, and referring them to their letter of January 3d, and quoting the words, " we shall be happy to supply you with any quantity," &c., and demanding a fulfilment of their "contract." The plaintiff did not state, in this last letter, that he had ever before given them notice that he had accepted their offer of January 3d. Nor does it appear, from either of the depositions filed in the case, that any such acceptance had ever been notified to the defendants.

The evidence does not show how the plaintiff obtained the numbers which the defendants accused him of selling at too low a price. Nor is it material that we should be informed.

Up to this point, no contract is shown. Assuming, without deciding, that the defendants' letter of January 3d was such an offer to sell as would have bound them, if it had been accepted, and the acceptance made known to them, yet they might retract the offer at any time before such acceptance. And we are of opinion that their refusal, about the 1st of February, to deliver the work to the plaintiff's brother, was a retraction of their offer. It is immaterial whether the defendants had a good reason, or no reason, for such retraction. It is sufficient that it was made before the offer was accepted.

The remaining correspondence between the parties, and the testimony as to their subsequent transactions, show no recognition, by the defendants, of any contract with the plaintiff. They made no reply to his complaints of their breach of contract, but occasionally refused to sell to him at all, and occasionally sold to him a few numbers of their work, and in one instance a large number, at their pleasure or convenience and on the terms mentioned in their first letter to him. These sales, for aught that the evidence shows, were made to him in the same manner in which they sold to other dealers, and as if there had been no previous communication between the parties.

If the plaintiff has been a loser by the defendants' treat-

14 *

ment of him, his loss is not shown to have been caused by their breach of the contract set forth in his declaration; for he has not shown that they ever made any such contract with him.        *Judgment for the defendants*

G. *Minot*, for the plaintiff.

S. *Bartlett*, for the defendants.